FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2012 MAR 30  P 1: 49

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

)
IN RE NATIONAL SECURITY          )
   LETTER                        )
                                 )   Case No. 1:12-mc-0007 (AJT/IDD)
                                 )
                                 )   FILED UNDER SEAL
                                 )   PURSUANT TO
                                 )   18 U.S.C. § 3511(d) AND
                                 )   THE COURT'S ORDER DATED
                                 )   MARCH 13, 2012
                                 )

*Redacted*

**MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR JUDICIAL REVIEW
AND ENFORCEMENT OF A NATIONAL SECURITY LETTER PURSUANT TO 18
U.S.C. § 3511**

STUART F. DELERY
Acting Assistant Attorney General

ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch
STEVEN Y. BRESSLER
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:    (202) 305-0167
Facsimile:    (202) 616-8470
Steven.Bressler@usdoj.gov

NEIL H. MACBRIDE
United States Attorney

R. JOSEPH SHER
KEVIN MIKOLASHEK
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, VA 22315
Telephone:    (703) 299-3891
Facsimile:    (703) 299-3983
Joe.Sher@usdoj.gov

*Attorneys for the United States*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ........................................................................................ 3

I.     Statutory Background ........................................................................ 3

        A.     National Security Letters ......................................................... 3

        B.     Confidentiality of National Security Letters ................................ 4

II.    Factual Background ......................................................................... 5

ARGUMENT .......................................................................................... 6

I.     Standard Of Review ......................................................................... 6

II.    The National Security Letter Issued To Respondent And Its Nondisclosure
      Requirement Comply With The Underlying Statute, 18 U.S.C. § 2709(c). ...... 7

        A.     As A Provider Of An "Electronic Communication Service," Respondent
            Is Subject To 18 U.S.C. § 2709(c) And The NSL Nondisclosure
            Obligation ..................................................................... 8

        B.     An Authorized FBI Official Certified The Need For Nondisclosure
            Of The NSL To Respondent ................................................. 11

        C.     The NSL Notified Respondent Of The Nondisclosure Requirement ........ 12

III.   The Certification Of Need For Nondisclosure In The National Security
      Letter Served On Respondent Is Justified, And The Nondisclosure Obligation
      Is Narrowly Tailored To Serve A Compelling Government Interest ............... 12

IV.   The NSL Is Otherwise Valid And Enforceable ........................................ 14

        A.     The Government May Validly Require That Private Parties Not Disclose
            Information Gained Through Participation In An Official Investigation ........... 14

        B.     The Nondisclosure Requirement Of The NSL Served On Respondent Is
            Not A Classic Prior Restraint Subject To Heightened First Amendment
            Scrutiny ...................................................................... 17

-i-

        C.     Even If Viewed As A Prior Restraint, The NSL Nondisclosure
            Requirement Is Valid ........................................................ 21

            1.     The NSL Nondisclosure Requirement Passes Muster Under The Fourth
                Circuit's Marchetti Decision. ..................................... 21

            2.     The Second Circuit Has Upheld The NSL Nondisclosure
                Requirement ...................................................... 22

            3.     The NSL Nondisclosure Requirement Here Is Accompanied
                By Ample And Adequate Procedural Protections ................... 23

                  a.     The FBI Has Sought Judicial Review Of The NSL,
                      Satisfying The Third *Freedman* Prong ...................... 24

                  b.     The NSL Served On Respondent Applied Its
                      Nondisclosure Requirement For Only A Brief Period
                      Prior To Judicial Review, Satisfying The First And
                      Second *Freedman* Prongs                 24

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2012 MAR 30 P 1: 49

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

)
IN RE NATIONAL SECURITY                    )
    LETTER                                 )
                                           )   Case No. 1:12-mc-0007 (AJT/IDD)
                                           )
                                           )   FILED UNDER SEAL
                                           )   PURSUANT TO
                                           )   18 U.S.C. § 3511(d) AND
                                           )   THE COURT'S ORDER DATED
                                           )   MARCH 13, 2012
                                           )

*Redacted*

## MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR JUDICIAL REVIEW AND ENFORCEMENT OF A NATIONAL SECURITY LETTER PURSUANT TO 18 U.S.C. § 3511

STUART F. DELERY
Acting Assistant Attorney General

ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch
STEVEN Y. BRESSLER
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:    (202) 305-0167
Facsimile:    (202) 616-8470
Steven.Bressler@usdoj.gov

NEIL H. MACBRIDE
United States Attorney

R. JOSEPH SHER
KEVIN MIKOLASHEK
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, VA 22315
Telephone:    (703) 299-3891
Facsimile:    (703) 299-3983
Joe.Sher@usdoj.gov

*Attorneys for the United States*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .......................................................................... 1

BACKGROUND .......................................................................................... 3

I.     Statutory Background ........................................................................... 3

      A.     National Security Letters ............................................................ 3

      B.     Confidentiality of National Security Letters ................................. 4

II.     Factual Background ............................................................................. 5

ARGUMENT .............................................................................................. 6

I.     Standard Of Review .......................................................................... 6

II.     The National Security Letter Issued To Respondent And Its Nondisclosure
Requirement Comply With The Underlying Statute, 18 U.S.C. § 2709(c). ...... 7

      A.     As A Provider Of An "Electronic Communication Service," Respondent
Is Subject To 18 U.S.C. § 2709(c) And The NSL Nondisclosure
Obligation ....................................................................... 8

      B.     An Authorized FBI Official Certified The Need For Nondisclosure
Of The NSL To Respondent ................................................ 11

      C.     The NSL Notified Respondent Of The Nondisclosure Requirement ......... 12

III.     The Certification Of Need For Nondisclosure In The National Security
Letter Served On Respondent Is Justified, And The Nondisclosure Obligation
Is Narrowly Tailored To Serve A Compelling Government Interest ............ 12

IV.     The NSL Is Otherwise Valid And Enforceable ........................................ 14

      A.     The Government May Validly Require That Private Parties Not Disclose
Information Gained Through Participation In An Official Investigation ...... 14

      B.     The Nondisclosure Requirement Of The NSL Served On Respondent Is
Not A Classic Prior Restraint Subject To Heightened First Amendment
Scrutiny .......................................................................... 17

C.    Even If Viewed As A Prior Restraint, The NSL Nondisclosure Requirement Is Valid ........................................................................... 21

    1.    The NSL Nondisclosure Requirement Passes Muster Under The Fourth Circuit's Marchetti Decision. ................................................ 21

    2.    The Second Circuit Has Upheld The NSL Nondisclosure Requirement ......................................................................... 22

    3.    The NSL Nondisclosure Requirement Here Is Accompanied By Ample And Adequate Procedural Protections ................................... 23

        a.    The FBI Has Sought Judicial Review Of The NSL, Satisfying The Third *Freedman* Prong ......................................... 24

        b.    The NSL Served On Respondent Applied Its Nondisclosure Requirement For Only A Brief Period Prior To Judicial Review, Satisfying The First And Second *Freedman* Prongs ........................................................... 24

CONCLUSION ................................................................................................ 25

## TABLE OF AUTHORITIES

CASES                                                                              PAGE(S)

*Alexander v. United States,*
   509 U.S. 544 (1993) ..................................................................................... 17, 18

   [REDACTED] ..................................... [REDACTED]

*Butterworth v. Smith,*
   494 U.S. 624 (1990) ..................................................................................... 15, 17

*City of Lakewood v. Plain Dealer Publishing Co.,*
   486 U.S. 750 (1988) ..................................................................................... 17, 18

*City of Littleton v. Z.J. Gifts D-4,*
   541 U.S. 774 (2004) ......................................................................................... 20

*Cooper v. Dillon,*
   403 F.3d 1208 (11th Cir. 2005) ......................................................................... 18

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz ("CAIR"),*
   793 F. Supp. 2d 311 (D.D.C. 2011) *quoting Quon v. Arch Wireless*
   *Operating Co., Inc.,* 529 F.3d 892 (9th Cir. 2008), *cert. denied in*
   *relevant part,* 130 S. Ct. 1011 (2009) ............................................................. 9, 10

   [REDACTED] ................................. [REDACTED]

*In re Debs,*
   158 U.S. 564 (1895) ........................................................................................... 7

*Department of the Navy v. Egan,*
   484 U.S. 518 (1988) ......................................................................................... 12

*Doe v. Ashcroft,*
   334 F. Supp. 2d 471 (S.D.N.Y. 2004) ............................................................... 16

*Doe v. Gonzales,*
   449 F.3d 415 (2d Cir. 2006) ............................................................................. 16

*Doe v. Mukasey,*
   549 F.3d 861 (2d Cir. 2008) ...................................................................... *passim*

*FW/PBS, Inc. v. City of Dallas,*
  493 U.S. 215 (1990) ............................................................................................................. 20

*First Am. Coalition v. Judicial Review Bd.,*
  784 F.2d 467, Section 2709(c) ............................................................................................ 16

*Freedman v. America Online, Inc.,*
  325 F. Supp. 2d 638 (E.D. Va. 2004) ................................................................................... 9

*Freedman v. Maryland,*
  380 U.S. 51 (1965) ................................................................................................... 19, 20, 22

 ..........................................................................................

*Haig v. Agee,*
  453 U.S. 280 (1981) ............................................................................................................ 12

*Hoffman-Pugh v. Keenan,*
  338 F.3d 1136 (10th Cir. 2003) .......................................................................................... 15

 ..........................................................................................

 ..........................................................................................

*Kingsley Intern. Pictures Corp. v. SUNY Regents,*
  360 U.S. 684 (1959) ............................................................................................................ 20

 ..........................................................................................

*Landmark Comm. v. Virginia,*
  435 U.S. 829 (1978) ............................................................................................................ 18

*McGehee v. Casey,*
  718 F.2d 1137 (D.C. Cir. 1983) ..................................................................................... 18, 21

*Quon v. Arch Wireless Operating Co., Inc.,* 529 F.3d 892 (9th Cir. 2008),
  *cert. denied in relevant part,* 130 S. Ct. 1011 (2009), *and reversed in part*
  *on other grounds,* 130 S. Ct. 2619 (2010) ...................................................................... 9, 10

*Seattle Times Co. v. Rhinehart,*
  467 U.S. 20 (1984) ...................................................................................................... *passim*

*In Re Subpoena to Testify,*
    864 F.2d 1559 (11th Cir. 1989) (similar) ............................................................. 15

*Thomas v. Chicago Park District,*
    534 U.S. 316 (2002) ..................................................................... 20, 24, 25

*United States v. Marchetti,*
    466 F.2d 1309 (4th Cir. 1972) ................................................................. *passim*

░░░░░░░░░░░░░░░░░░░░░░░░░░░ ............................................................... ░░░

*Wyandotte Transportation Co. v. United States,*
    389 U.S. 191 (1967) ................................................................................ 7

## STATUTES

18 U.S.C. § 2709 ............................................................................... 1, 2, 3

12 U.S.C. § 3414(a)(1) ............................................................................. 12

12 U.S.C. § 3414(a)(5) .......................................................................... 3, 12

12 U.S.C. § 3420(b) ............................................................................... 17

15 U.S.C. §§ 1681u-1681v ...................................................................... 3, 12

18 U.S.C. §§ 793-794, 798 ......................................................................... 18

18 U.S.C. § 2510(15) ............................................................................... 9

18 U.S.C. § 2711 ............................................................................... 9, 17

18 U.S.C. § 2701 *et seq* ........................................................................ 8, 9

18 U.S.C. § 2709(c) ............................................................................. *passim*

18 U.S.C. § 2709(c)(1) .......................................................................... *passim*

18 U.S.C. § 3123(d) ............................................................................... 17

18 U.S.C. § 3511 ................................................................................ *passim*

## PRELIMINARY STATEMENT

National security and law enforcement investigations, by their very nature, require federal government officials to collect information. Secrecy is essential to the effective conduct of such investigations; public disclosure of steps taken to investigate the activities of terrorist groups and foreign intelligence organizations poses a direct and immediate threat to the government's ability both to detect and to prevent those activities. Alerted to the existence of an investigation, its direction, or the methods and sources being used to pursue the investigation, targeted individuals or groups can take steps to evade detection, destroy evidence, mislead investigators, and change their own conduct to minimize the possibility that future terrorist and foreign intelligence activities will be detected.

Title 18 U.S.C. § 2709 is one of a number of statutes that authorizes the government to collect information in service of a national security investigation and to prevent private parties to whom the government turns for information from destroying the confidentiality of the government's inquiry. Pursuant to that statute and as part of an authorized, ongoing national security investigation, the Federal Bureau of Investigation ("FBI") served a National Security Letter ("NSL") on ▮▮▮▮▮▮▮▮ and electronic communication service provider, ▮▮▮▮▮▮▮ ("respondent"). The NSL made a limited, specific inquiry for subscriber information related to a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ owned and operated by respondent. Pursuant to § 2709(c), a designee of the Director of the FBI certified that the NSL must remain secret to prevent harm to, *inter alia*, national security, and therefore that the NSL requires that respondent not disclose the existence or contents of the NSL.

The NSL nondisclosure obligation was imposed on respondent in compliance with the statutory requirement that a designated, senior FBI official personally certify the need for nondisclosure. And as set forth in the classified Declaration of FBI Assistant Director ▮▮▮▮▮

-1-

▢ to be submitted to the Court *ex parte* and *in camera* pursuant to 18 U.S.C. § 3511, there was and remains good reason to impose the nondisclosure requirement. The Court should, therefore, enforce it.

While the nondisclosure requirement prohibits respondent from disclosing certain, limited information, it passes muster under the First Amendment. Numerous judicial precedents make clear that Congress may constitutionally prohibit disclosure of information about a secret government investigation that a private party learns only through its own involvement in the investigation. Indeed, courts have recognized that the "restraint" on communication of information learned solely by involvement in a government investigation is not a classic prior restraint of the type that receives heightened scrutiny. Regardless, the nondisclosure requirement here would survive even the strictest scrutiny, for it is designed to further the compelling governmental and public interest in effectively detecting and preventing terrorism and foreign espionage, and it is carefully tailored to restrict only information that respondent has learned through its involvement in the NSL inquiry itself.

And, in any event, the NSL issued to petitioner was accompanied by procedural protections that would satisfy the most searching test applied to prior restraints even if it applied here: the government has accepted the burden of seeking, and has sought, judicial review of the NSL within a reasonable time (30 days) after respondent objected to it.

For all of these reasons, the Court should grant the Attorney General's petition and order that respondent is bound by the nondisclosure requirement of the NSL and 18 U.S.C. § 2709.

# BACKGROUND

## I.   Statutory Background

### A.   National Security Letters

The President of the United States has charged the FBI with primary authority for conducting counterintelligence and counterterrorism investigations in the United States. *See* Exec. Order No. 12333 §§ 1.14(a), 3.4(a), 46 Fed. Reg 59941 (Dec. 4, 1981). The FBI's experience with national security investigations has shown that electronic communications play a vital role in advancing terrorist and foreign intelligence activities and operations. *See* Classified Declaration of ▮▮▮▮▮ Assistant Director of the FBI for the ▮▮▮ Division, to be submitted *ex parte* and *in camera* to the Court pursuant to 18 U.S.C. § 3511(e) and 28 C.F.R. § 17.17.[1] Accordingly, pursuing and disrupting, *e.g.*, espionage and terrorist plots often requires the FBI to seek information relating to electronic communications.

Title 18 U.S.C. § 2709 was enacted by Congress 25 years ago to assist the FBI in obtaining such information. Section 2709 empowers the FBI to issue an NSL, a type of administrative subpoena. Several other federal statutes also authorize government authorities to issue NSLs in connection with counterintelligence and counterterrorism investigations. *See* 12 U.S.C. § 3414(a)(5); 15 U.S.C. §§ 1681u-1681v; 50 U.S.C. § 436. Subsections (a) and (b) of § 2709 authorize the FBI to request "subscriber information" and "toll billing records information," or "electronic communication transactional records," from wire or electronic communication service providers. Section 2709 does not authorize the FBI to seek the content

---

[1] The Attorney General lodged Assistant Director ▮▮▮▮ declaration with the Classified Information Security Officer on ▮▮▮▮ The government will file under seal and serve on respondent a redacted version of Assistant Director ▮▮▮▮ declaration that does not contain classified information or other sensitive law enforcement information that cannot be shared with respondent.

of any wire or electronic communication.  In order to issue an NSL, the Director of the FBI, or a

senior-level designee, must certify that the information sought is "relevant to an authorized

investigation to protect against international terrorism or clandestine intelligence activities . . . ."

*Id.* § 2709(b)(1)-(2).  When an NSL is issued in connection with an investigation of a "United

States person," the same officials must also certify that the investigation is "not conducted solely

on the basis of activities protected by the first amendment . . . ."  *Id.*

### B.     Confidentiality of National Security Letters

Counterintelligence and counterterrorism investigations are long-range, forward-looking,

and prophylactic in nature; *e.g.*, the government aims to disrupt terrorist acts against the United

States before they occur.  Because these investigations are directed at individuals or groups

taking efforts to keep their own activities secret, it is essential that targets not learn that they are

the subject of an investigation. *E.g.,* ▮▮▮ Decl. ¶¶ ▮▮▮  If targets learn that their activities

are being investigated, they can be expected to take action to avoid detection or disrupt the

government's intelligence gathering efforts. *See id.* ¶¶ ▮▮▮.  Likewise, knowledge about the

scope or progress of a particular investigation allows targets to determine the FBI's degree of

penetration of their activities and to alter their timing or methods. *Accord id.*  The same concern

applies to knowledge about the sources and methods the FBI is using to acquire information.

*See id.* ¶ ▮.

The secrecy needed for successful national security investigations can be compromised if

a ▮▮▮ provider discloses that it has received or provided information pursuant to an NSL.  To

avoid that result, Congress has placed restrictions on disclosures by NSL recipients, contained in

18 U.S.C. § 2709(c).  The nondisclosure requirement requires a case-by-case determination of

need by the FBI and thus prohibits disclosure only if the Director of the FBI or another

designated senior FBI official certifies that "otherwise there may result a danger to the national

security of the United States, interference with a criminal, counterterrorism, or

counterintelligence investigation, interference with diplomatic relations, or danger to the life or

physical safety of any person." *Id.* § 2709(c)(1). If such a certification is made, the NSL itself

notifies the recipient of the nondisclosure obligation. *Id.* § 2709(c)(2). Violation of the

nondisclosure requirement is a criminal offense *if* the recipient discloses the information

"knowingly and with the intent to obstruct an investigation or judicial proceeding." *Id.* § 1510.

## II.    Factual Background

As part of an ongoing, authorized national security investigation, the FBI issued an NSL

dated [_____] 2012, and served on [_____] 2012 to [_____] requesting

information concerning a [_____]

serviced by [_____] [2] In particular, the NSL requested the [_____]

[_____] electronic communications transactional records for the [_____] pursuant

to 18 U.S.C. § 2709.

The NSL was issued by the Special Agent in Charge ("SAC") of FBI's [_____]

[_____] an FBI official who is authorized to issue NSLs under 18 U.S.C. § 2709. *See* NSL,

Attachment 1; *see also* [_____] Decl. ¶ [_____]. The SAC also certified pursuant to § 2709(b)

that the information sought was relevant to an authorized investigation to protect against

---

[2] [_____]

-5-

international terrorism or clandestine intelligence activities. *See* NSL, Attachment 1; *see also*
[        ] Decl. ¶¶ [        ]

The NSL informed [        ] of the prohibition against disclosing the contents of
the NSL, certifying, in accordance with § 2709(c), that such disclosure could result in an
enumerated harm that is related to an "authorized investigation to protect against international
terrorism or clandestine intelligence activities." The letter notified [        ] that in
accordance with 18 U.S.C. § 3511(a) and (b), [        ] had a right to challenge the letter if
compliance would be unreasonable, oppressive, or otherwise illegal.

The letter also advised that [        ] had 10 days to notify the FBI as to whether it
desired to challenge the nondisclosure provision. On [        ] 2012, the FBI received a letter
via facsimile from [        ] *See* Attachment 2. According to its letter, [        ]
[        ] *Id.* For this reason, [        ] requested that the FBI obtain a judicial order requiring
the nondisclosure of the receipt of the NSL. *Id.*
[        ]
[        ] FBI has certified that disclosure
of the fact or contents of the NSL to [        ] would cause harm to its ongoing national
security investigation.

## ARGUMENT

### I.    Standard Of Review

The Attorney General brings his petition for judicial review and enforcement of the NSL
under 18 U.S.C. § 3511. Under that statute, Congress has provided that, when the recipient of an
NSL "fail[s] to comply with [the] request for records, a report, or other information," the
Attorney General "may invoke the aid of any district court of the United States within the

jurisdiction in which the investigation is carried on or the person or entity resides, carries on

business, or may be found, to compel compliance with the request." 18 U.S.C. § 3511(c).

And the "request" which the Attorney General may seek to enforce in a court includes that

"notif[ication]" (and imposition) "of the nondisclosure requirement." *Id.* § 2709(c)(2).[3]  A

disclosure of information about the NSL such as respondent wishes to make is thus a "fail[ure] to

comply with [the] request" and, under § 3511, this Court "may issue an order," punishable as

contempt, "requiring the [respondent] to comply with the request," including its nondisclosure

requirement. *Id.*[4]

## II.    The National Security Letter Issued To Respondent And Its Nondisclosure Requirement Comply With The Underlying Statute, 18 U.S.C. § 2709(c).

The NSL statute, 18 U.S.C. § 2709(c), provides that:

> If the Director of the Federal Bureau of Investigation, or his designee in a position
> not lower than Deputy Assistant Director at Bureau headquarters or a Special
> Agent in Charge in a Bureau field office designated by the Director, certifies that
> otherwise there may result a danger to the national security of the United States,
> interference with a criminal, counterterrorism, or counterintelligence
> investigation, interference with diplomatic relations, or danger to the life or
> physical safety of any person, no wire or electronic communications service
> provider, or officer, employee, or agent thereof, shall disclose to any person
> (other than those to whom such disclosure is necessary to comply with the request

---

[3] Section 3511(c) is symmetrical to § 3511(b), which authorizes NSL recipients to seek
judicial review of a nondisclosure requirement.  Under § 3511(b), a district court "may modify or
set aside" the nondisclosure requirement if the court finds "no reason to believe" that disclosure
"may endanger the national security of the United States, interfere with a criminal,
counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or
endanger the life or physical safety of any person." *Id.* § 3511(b)(2), (b)(3).

[4] Even in the absence of this express, statutory authorization to invoke the aid of this
Court, the government would have standing to bring suit to vindicate its sovereign interests by
preventing the disclosure of sensitive national security or law enforcement information. *See, e.g.,
Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 201-07 (1967) (noting the long
line of cases recognizing that the United States may sue to protect its sovereign or statutory
interests); *In re Debs*, 158 U.S. 564, 586 (1895) (the United States possesses a non-statutory
cause of action to vindicate federal interests in the federal courts); *United States* v. *Marchetti*,
466 F.2d 1309, 1313 & n.3 (4th Cir. 1972) (following *Debs* to hold that the government had non-
statutory standing to bring suit to enjoin a threatened disclosure of classified information).

or an attorney to obtain legal advice or legal assistance with respect to the request) that the Federal Bureau of Investigation has sought or obtained access to information or records under this section.

*Id.* § 2709(c)(1). The statute further provides that, when nondisclosure is required, the NSL

"shall notify the person or entity to whom the request is directed of the nondisclosure

requirement[.]" *Id.* § 2709(c)(2).

As set forth below, the NSL nondisclosure obligation here is imposed in compliance with

all of these requirements.[5]

### A.   As A Provider Of An "Electronic Communication Service," Respondent Is Subject To 18 U.S.C. § 2709(c) And The NSL Nondisclosure Obligation

The NSL statute, 18 U.S.C. § 2709, authorizes the FBI to obtain information via NSL

from, and to impose a nondisclosure requirement on, a "wire or electronic communication

service provider." *Id.* § 2709(a). ████████████████████

████████████████████ is such an electronic communication service provider in its

activities relevant to the NSL.[6]

Section 2709 is contained in Title II of the Electronic Communications Privacy Act

(ECPA), 18 U.S.C. §§ 2701 *et seq.* ECPA defines "electronic communication service" ("ECS")

as any service that "provides to users thereof the ability to send or receive wire or electronic

---

[5] A 2007 report by the Department of Justice Inspector General identified problems with FBI's usage of NSLs in 2006, that is, six years ago. In a follow-up report in 2008, the Inspector General examined the FBI's efforts to correct errors identified in the 2007 report, and concluded that "the FBI and the Department have made significant progress in implementing the recommendations from that report and in adopting other corrective actions to address serious problems we identified in the use of national security letters." Office of the Inspector General, *A Review of the FBI's Use of National Security Letters: Assessment of Corrective Actions and Examination of NSL Usage in 2006*, p. 6 (March 2008), *available at* http://www.usdoj.gov/oig/reports/FBI/index.htm. See also *id.* at 6-7 (discussing significant efforts and commitment of FBI staff to correcting past problems), *id.* at 13-74 (discussing corrective measures in detail).

[6] In its correspondence objecting to the nondisclosure requirement (Attachment 2), ████████ has not disputed that it is an electronic communication service provider.

communications." 18 U.S.C. §§ 2510(15), 2711(1). "The language chosen by Congress" to

define an electronic communication service thus "captures any service that stands as a 'conduit'

for the transmission of wire or electronic communications from one user to another." *See*

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz ("CAIR")*, 793 F. Supp.

2d 311, 334 (D.D.C. 2011) *quoting Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892,

902 (9th Cir. 2008), *cert. denied in relevant part*, 130 S. Ct. 1011 (2009), *and reversed in part

on other grounds*, 130 S. Ct. 2619 (2010). When Congress enacted ECPA in 1986, it made it

clear that "the term [electronic communications service provider] is not . . . narrowly confined."

*See CAIR*, 793 F. Supp. 2d at 334. ECS providers in 1986 included, in addition to telephone

companies, others such as "[e]lectronic 'bulletin board[ ]'" operators and electronic mail

companies. *See* S. REP. NO. 99-541 at 8-9 (1986), as reprinted in 1986 U.S.C.C.A.N. 3562-63.

*See also, e.g., Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638, 643 & n.4 (E.D. Va.

2004) (Internet service provider America Online was electronic communication service

provider). The legislative examples thus make clear what kind of businesses Congress had in

mind when it adopted ECPA's definition of electronic communication service: a service that

allows members of the public to communicate with each other. *See, e.g., Quon*, 529 F.3d at 902;

*CAIR*, 793 F. Supp. 2d at 334.



                                                    is an electronic communications service,

                                            [7] that permits users to communicate with each other

provides "a 'conduit' for the transmission of wire or electronic

communications" among users. *See CAIR*, 793 F. Supp. 2d at 334, *quoting Quon*, 529 F.3d at

902. [redacted] is, therefore, an electronic

communications service provider subject to 18 U.S.C. § 2709(c).

And as an electronic communication service provider, [redacted] is subject to the NSL and its nondisclosure obligation pursuant to 18 U.S.C. § 2709(c).

**B.     An Authorized FBI Official Certified The Need For Nondisclosure Of The NSL To Respondent.**

The NSL nondisclosure obligation on respondent here satisfies the requirement that the need for nondisclosure be certified by an appropriate, senior FBI official.  Under the NSL statute, 18 U.S.C. § 2709(c)(1), the nondisclosure obligation is imposed on an NSL recipient electronic communication service provider such as respondent when "the Director of the Federal Bureau of Investigation, or his designee . . . [including] a Special Agent in Charge in a Bureau field office designated by the Director, certifies that otherwise there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." Here [redacted] the Special Agent in Charge of the FBI's [redacted] made the required certification in the NSL itself, using the statutory language. *See* NSL, Attachment 1 hereto, at 2. *See also* [redacted] Decl. at ¶¶ [redacted] (explaining further the need for continued nondisclosure of the NSL to respondent).  The [redacted] is designated as one whose Special Agent in Charge is authorized to certify the need for nondisclosure of an NSL under 18 U.S.C. § 2709(c).  *See* [redacted] Decl. ¶ [redacted]

**C.     The NSL Notified Respondent Of The Nondisclosure Requirement.**

As required by statute, in the NSL itself Special Agent in Charge [redacted] also informed respondent that the statutory nondisclosure obligation was being imposed under 18 U.S.C.

§ 2709(c).  *See* NSL, Attachment 1, at 2.

The NSL to respondent was therefore issued in full compliance with all statutory

requirements.

**III.  The Certification Of Need For Nondisclosure In The National Security Letter Served On Respondent Is Justified, And The Nondisclosure Obligation Is Narrowly Tailored To Serve A Compelling Government Interest.**

As Assistant Director [redacted] explains in his Declaration, providing greater detail to fortify

the certification previously made by Special Agent in Charge [redacted] the NSL nondisclosure

requirement is applied to petitioner here in order to shield an ongoing, authorized investigation

and, thereby, protect against a danger to the national security of the United States and/or

interference with the investigation.  That governmental interest is a manifestly compelling one.

*See, e.g., Department of the Navy* v. *Egan*, 484 U.S. 518, 527 (1988) ("This Court has

recognized the Government's 'compelling interest' in withholding national security information

from unauthorized persons in the course of executive business"); *Haig v. Agee*, 453 U.S. 280,

307 (1981) ("no governmental interest is more compelling than the security of the Nation.").

Congress repeatedly has recognized the need for secrecy when conducting

counterintelligence and counter-terrorism investigations, and so each of the several statutes

allowing issuance of NSLs includes a nondisclosure provision similar to 18 U.S.C. § 2709©.[8]

As Congress has explained, "the FBI could not effectively monitor and counter the clandestine

activities of hostile espionage agents and terrorists if they had to be notified that the FBI sought

---

[8] *See* 12 U.S.C. § 3414(a)(1) (requests from certain government authorities for financial records); 12 U.S.C. § 3414(a)(5) (FBI requests to financial institutions for financial records of customers); 15 U.S.C. § 1681u (FBI requests to consumer reporting agencies for records seeking identification of financial institutions and other identifying information of consumers); 15 U.S.C. § 1681v (requests to consumer reporting agencies for consumer reports and all other information in consumers' files); 50 U.S.C. § 436(b) (requests to financial institutions or consumer reporting agencies for financial information and consumer reports needed for authorized law enforcement investigation, counterintelligence inquiry, or security determination).

their . . . records for counterintelligence investigations," and the "effective conduct of FBI counterintelligence activities requires such non-disclosure." H. REP. NO. 99-690(I) at 15, 18, *reprinted in* 1986 U.S.C.C.A.N. 5341, 5345 (regarding enactment of 12 U.S.C. § 3414(a)(5)). Congress also has imposed similar nondisclosure requirements in connection with the use of other investigative techniques apart from NSLs in national security investigations.[9]

The NSL here is carefully tailored to advance the public interest, support an ongoing FBI investigation and protect national security without unnecessarily restricting expression. By its terms, the nondisclosure requirement of the NSL narrowly applies only to prevent the respondent's disclosure of the fact that the government "has sought or obtained access to information or records" under 18 U.S.C. § 2709. The NSL does not purport to prohibit respondent from disclosing any other information, and places no restriction on respondent's ability to engage in general public discussions regarding matters of public concern. As discussed in the ▢ Declaration, the nondisclosure requirement is tailored as narrowly as possible to serve the compelling interests described above. Moreover, as discussed *infra* the FBI has afforded petitioner ample procedural protections here that exceed those required by the Constitution.

## IV.    The NSL Is Otherwise Valid And Enforceable.

As set forth above, the NSL issued to respondent satisfied all the applicable statutory criteria. It is, moreover, valid under law, and should be enforced by the Court. *Accord* 18 U.S.C. § 3511(a) (when an NSL recipient challenges the NSL, a court may modify or set it aside

---

[9] *See* 50 U.S.C. § 1842(d)(2)(B) (pen register or trap and trace device for foreign intelligence and counter-terrorism investigations); 50 U.S.C. § 1861(d)(2)(order for production of tangible things in connection with national security investigations); 50 U.S.C. § 1802(a)(4)(A) (electronic surveillance to intercept foreign intelligence information); 50 U.S.C. § 1822(a)(4)(A) (physical search for foreign intelligence information).

only if it is "unreasonable, oppressive, or otherwise unlawful").

The NSL nondisclosure requirement imposes a necessary restriction on what respondent may disclose. In another case concerning the nondisclosure obligation, courts in the Second Circuit considered how the requirement implicated the First Amendment, if at all. *E.g., Doe v. Mukasey*, 549 F.3d 861 (2d Cir. 2008) (upholding NSL statute against First Amendment challenge). As explained below, the nondisclosure requirement applied to respondent here is as proper than the confidentiality requirements described above. It complies with the First Amendment, is not a classic prior restraint, and survives any properly-applied scrutiny because it is narrowly tailored to serve the paramount governmental and public interest in national security.

### A. The Government May Validly Require That Private Parties Not Disclose Information Gained Through Participation In An Official Investigation.

The critical need for secrecy in national security investigations explained above and in the [        ] Declaration provides the explanation and justification for the nondisclosure requirement of the NSL served on respondent. When relevant information is in the hands only of third parties, requests from the government for the information unavoidably notify those parties of the investigation and give them knowledge to which they were not previously privy. In these circumstances, the best way to prevent the investigation from being compromised is to obligate the private party not to disclose information about the investigation that it has learned through its own involvement.

Numerous judicial decisions make clear that restrictions on a party's disclosure of information obtained through involvement in confidential proceedings stand on a firmer constitutional footing than restrictions on the disclosure of information obtained through independent means. In *Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20 (1984), the Supreme Court

upheld the constitutionality of a judicial order that prohibited parties to a civil suit from disclosing sensitive information obtained through pretrial discovery. In rejecting a First Amendment challenge to the order, the Court noted that the parties "gained the information they wish to disseminate only by virtue of the trial court's discovery processes," which themselves were made available as a matter of legislative grace rather than constitutional right. 467 U.S. at 32. The Court found that "control over [disclosure of] the discovered information does not raise the same specter of . . . censorship that such control might suggest in other situations." *Id.*

The Supreme Court relied on this distinction again in *Butterworth v. Smith*, 494 U.S. 624 (1990), where the Court held that Florida could not constitutionally prohibit a grand jury witness from disclosing the substance of his testimony after the term of the grand jury had ended. In so holding, the Court distinguished *Rhinehart* on the ground that "[h]ere . . . we deal only with [the witness's] right to divulge information of which he was in possession before he testified before the grand jury, and not information which he may have obtained as a result of his participation in the proceedings of the grand jury." *Id.* at 632; *id.* at 636 (Scalia, J., concurring) ("[q]uite a different question is presented . . . by a witness' disclosure of the grand jury proceedings, which is knowledge he acquires not 'on his own' but only by virtue of being made a witness.").[10]

Section 2709(c) is analogous to the grand jury and other investigatory nondisclosure provisions discussed above. Indeed, 18 U.S.C. § 2709 is intended explicitly to mirror grand jury

---

[10] The Circuit Courts of Appeal likewise have upheld similar nondisclosure requirements based on this principle. *See Hoffman-Pugh v. Keenan*, 338 F.3d 1136, 1140 (10th Cir. 2003) ("a [constitutional] line should be drawn between information the witness possessed prior to becoming a witness and information the witness obtained through her actual participation in the grand jury process"; upholding statute prohibiting disclosure of, *inter alia*, information sought by prosecution in grand jury); *In Re Subpoena to Testify*, 864 F.2d 1559, 1562 (11th Cir. 1989) (similar); *First Am. Coalition v. Judicial Review Bd.*, 784 F.2d 467, 479 (3d Cir. 1986) (*en banc*) (state may prohibit witnesses and other persons "from disclosing proceedings taking place before" a judicial misconduct investigation board).

subpoena powers in many key respects. *See* H. REP. NO. 107-236(I) at 61-62 (Congress sought

to "harmonize" § 2709 "with existing criminal law where an Assistant United States Attorney

may issue a grand jury subpoena for all such records in a criminal case."). In *Doe v. Ashcroft*, a

case considering the facial constitutionality of 18 U.S.C. § 2709(c), the court concluded that

"[t]he principle that *Rhinehart* and its progeny represent is directly applicable" to § 2709

because "[a]n NSL recipient or other person covered by the statute learns that an NSL has been

issued only by virtue of his particular role in the underlying investigation." 334 F. Supp. 2d 471,

519 (S.D.N.Y. 2004), *vacated on other grounds, Doe v. Gonzales*, 449 F.3d 415 (2d Cir. 2006);

*see also id.* at 518 (the "laws which prohibit persons from disclosing information they learn

solely by means of participating in confidential government proceedings trigger less First

Amendment concerns tha[n] laws which prohibit disclosing information a person obtains

independently."). And in *Doe v. Mukasey*, a subsequent appeal in that litigation discussed

further below, the Second Circuit held that "[t]he nondisclosure requirement of subsection

2709(c) is not a typical prior restraint or a typical content-based restriction warranting the most

rigorous First Amendment scrutiny." 549 F.3d 861, 877.[11]

---

[11]In *Mukasey*, the Second Circuit did not fully accept the analogy between the NSL nondisclosure requirement and those in proceedings in which "interests in secrecy arise from the nature of the proceeding," such as grand juries, because "the nondisclosure requirement of subsection 2709(c) is imposed at the demand of the Executive Branch under circumstances where secrecy might or might not be warranted, depending on the circumstances alleged to justify such secrecy." 549 F.3d at 877. But for all the often-obvious reasons discussed above why national security investigations require secrecy, those interests likewise inhere "from the nature of the proceeding" in this context. *Id.* Thus, by requiring that the FBI make a case-by-case determination before applying the nondisclosure requirement, the NSL statutory procedures provide greater protection than what is constitutionally required. In *Butterworth*, for example, the Supreme Court did not require a prosecutor to make a case-by-case determination of whether "witnesses would be hesitant to come forward" or "less likely to testify fully and frankly" absent Federal Rule of Criminal Procedure 6(e), nor whether "those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment." 494 U.S. at 630. Nor do the nondisclosure provisions of wiretap, pen register, and similar laws require the government to make a case-by-case determination of the scope of required confidentiality. *See* 18 U.S.C.

Indeed, the nondisclosure requirement is not a typical prior restraint. In any event, because the nondisclosure requirement is accompanied by procedural protections that meet or exceed those courts have imposed when considering prior restraints, it passes constitutional muster.

**B.      The Nondisclosure Requirement Of The NSL Served On Respondent Is Not A Classic Prior Restraint Subject To Heightened First Amendment Scrutiny.**

As the Second Circuit held, the nondisclosure obligation imposed on respondent here "is not a typical prior restraint or a typical content-based restriction[.]" *Mukasey*, 549 F.3d at 877. Because the NSL restricts limited information obtained only by participation in a confidential investigation, it does not "raise the same specter of censorship" as other restrictions, *Rhinehart*, 467 U.S. at 32, and does not "warrant[] the most rigorous First Amendment scrutiny," *Mukasey*, 549 F.3d at 877.

"The doctrine of prior restraint originated in the common law of England, where prior restraints of the press were not permitted, but punishment after publication was." *Alexander v. United States*, 509 U.S. 544, 553 (1993). The Supreme Court has recognized two types of classic prior restraints, neither of which applies to the NSL here. The first is a licensing scheme for speech, where the plaintiff's right to speak is conditioned on prior approval from the government. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757 (1988). By contrast, a categorical prohibition on certain speech with the threat of punishment for disclosure *after* the fact is not a prior restraint. *See id.* at 764 (distinguishing between statute imposing prohibition on speech and one conditioning speech on obtaining a license or permit).

Here, the NSL categorically prohibits respondent from disclosing that it has received the NSL. This is akin to the statute challenged in *Landmark Comm. v. Virginia*, 435 U.S. 829

---

§§ 2511, 3123(d); 50 U.S.C. §§ 1842(d), 1861(d); 12 U.S.C. § 3420(b); 31 U.S.C. § 5326.

(1978), which prohibited the disclosure of information about the proceedings of a judicial investigative body and imposed criminal penalties for violation. *See id.* at 830. Such a nondisclosure provision "does not constitute a prior restraint or attempt by the State to censor the news media." *Id.* at 838. Similarly, in *Cooper* v. *Dillon*, 403 F.3d 1208 (11th Cir. 2005), the Eleventh Circuit held that a state law prohibiting disclosure of non-public information obtained through participation in a law enforcement investigation "cannot be characterized as a prior restraint on speech because the threat of criminal sanctions imposed after publication is precisely the kind of restriction that the [Supreme] Court has deemed insufficient to constitute a prior restraint." *Id.* at 1215-16. In short, a categorical prohibition on disclosures enforceable by a penalty action after the fact is not a prior restraint. Were that not so, countless state and federal statutes, including every anti-espionage statute that prohibits the disclosure of classified information, would be a prior restraint. *See, e.g.,* 18 U.S.C. §§ 793-794, 798.[12]

The second category of prior restraint takes the form of court injunctions against certain speech or speakers. *See Alexander,* 509 U.S. at 550. Here, the Attorney General petitions the Court for an order prohibiting respondent from making the disclosures prohibited by the NSL pursuant to 18 U.S.C. § 3511. However, as discussed *supra,* and as the Supreme Court has recognized, court orders prohibiting information acquired only by virtue of involvement in an official investigation do not raise the same concerns as other injunctions on speech. *Rhinehart,* 467 U.S. at 32. At a minimum, the nondisclosure requirement of the NSL is not "the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Id.* at 33; *Mukasey,* 549

---

[12]Whenever the executive branch classifies any item of information under Executive Order 13292, it thereby prohibits the disclosure of the information by the information's recipients. *See* 18 U.S.C. § 793 (providing criminal penalties for improper disclosure of classified information). The classification of information itself, like a categorical prohibition of disclosure with threat of subsequent punishment, does not "constitute[] a prior restraint in the traditional sense." *See McGehee* v. *Casey,* 718 F.2d 1137, 1147 (D.C. Cir. 1983).

F.3d at 877 (NSL nondisclosure requirement does not "warrant[] the most rigorous First Amendment scrutiny.").

The high-water mark of prior restraint protection is *Freedman v. Maryland*, 380 U.S. 51 (1965). An examination of that case, and the factors that distinguish the NSL nondisclosure requirement from a typical prior restraint such as the Supreme Court considered in *Freedman*, underscore why *Freedman* does not apply.

*Freedman* involved the constitutionality of a "censorship statute" that made it unlawful to exhibit any motion picture unless and until the film was "submitted [to] . . . and duly approved and licensed by" a state Board of Censors. 380 U.S. at 735 & n.2. The statute directed the Board of Censors to "approve and license such films . . . which are moral and proper," and to "disapprove such as are obscene, or such as tend . . . to debase or corrupt morals or incite to crimes." *Id.* at 52 n.2. The statute did not place any time limit on the Board's deliberations, nor did it provide any "assurance of prompt judicial determination" regarding the Board's decisions. *Id.* at 59-60. There were two primary concerns with this scheme not present here. First, "[b]ecause the censor's business is to censor," institutional bias may lead to the suppression of speech that should be permitted. *Id.* at 57. Second, "if it is made unduly onerous, by reason of delay or otherwise, to seek judicial review, the censor's determination may in practice be final." *Id.* at 58. The "procedural safeguards" adopted by the Supreme Court were "designed to obviate the[se] dangers" by minimizing the burdens of administrative and judicial review. *Id.*

Thus, *Freedman* requires that: "'(1) any [administrative] restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.'" *Thomas* v. *Chicago Park District*, 534 U.S. 316, 321 (2002) (quoting *FW/PBS, Inc.* v.

*City of Dallas*, 493 U.S. 215, 227 (1990) (plurality opinion)); *Freedman*, 380 U.S. at 58-60.

The scope and origin of the information at issue here is profoundly different than in *Freedman*. The statute there undertook to censor private films whose contents were created independently of the government itself. The NSL and 18 U.S.C. § 2709©, in contrast, place no restriction on the disclosure of independently obtained information, but are confined to sensitive information that the NSL recipient learns only by his involvement in the government's own investigation.

Another critical difference is that the nature of the "typical First Amendment harm" associated with a law imposing censorship on motion pictures is far greater than the First Amendment risks associated with a law prohibiting the disclosure of confidential information about a national security investigation. *See City of Littleton* v. *Z.J. Gifts D-4*, 541 U.S. 774, 782-83 (2004). In *Freedman*, the licensing scheme at issue was not confined to obscene speech, but extended to films that "tend to debase or corrupt morals," an open-ended category that reaches protected speech. 380 U.S. at 52 n.2. *See, e.g., Kingsley Intern. Pictures Corp.* v. *SUNY Regents*, 360 U.S. 684, 688-89 (1959). In contrast, like the secrecy agreement in *Marchetti*, the NSL nondisclosure requirement is aimed at protecting highly sensitive national security investigations, and respondent remains free to disseminate information obtained outside the investigation. Moreover, the reach of the nondisclosure obligation is limited to a narrow category of information that is not characteristically political. The object of the nondisclosure provision is not to censor private speech, but to ensure that the secrecy of the government's own activities is not compromised when those activities must be made known to private persons in order to obtain their assistance. *Cf. Marchetti*, 466 F.2d at 1315 ("The Government . . . has the right and the duty to strive for internal secrecy about the conduct of governmental affairs in areas in which disclosure may reasonably be thought to be inconsistent with the national interest."). If

this is a prior restraint at all, it is "not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Rhinehart*, 467 U.S. at 33. And as noted *supra*, the FBI's determination that disclosure of information concerning the NSL to respondent may cause one or more of the harms identified in § 2709© is similar to a determination that government information should be classified on national security grounds – a classification process that, itself, is not a prior restraint for First Amendment purposes. *See, e.g., McGehee*, 718 F.2d at 1147; *Marchetti*, 466 F.2d at 1317.

      **C.**    **Even If Viewed As A Prior Restraint, The NSL Nondisclosure Requirement Is Valid.**

      Even if viewed as a prior restraint, the NSL nondisclosure requirement crafted by Congress in 18 U.S.C. § 2709(c) and applied here after an individualized determination of need is appropriate. As discussed further below, it has been upheld for similar application by the Second Circuit. *Mukasey*, 549 F.3d 861. Moreover, if considered a prior restraint it is one of the sort that has been upheld previously by the U.S. Court of Appeals for the Fourth Circuit.

      **1.**    **The NSL Nondisclosure Requirement Passes Muster Under The Fourth Circuit's *Marchetti* Decision.**

      In *United States v. Marchetti*, 466 F.2d 1309, the United States sought to enjoin a former Central Intelligence Agency employee from publishing a proposed book that included classified information in violation of his secrecy agreement and secrecy oath. This Court granted an injunction, and the Court of Appeals affirmed. The Fourth Circuit, considering the injunction against the former employee to be a prior restraint and following *Freedman* (*Marchetti*, 466 F.2d at 1217), upheld the injunction. The Court of Appeals held that "the Government's need for secrecy in this area lends justification to a system of prior restraint against disclosure" by current and former employees of classified information obtained in their employment. *Id.*, 466 F.2d at 1316-17. The Court continued:

> One may speculate that ordinary criminal sanctions might suffice to prevent
> unauthorized disclosure of such information, but the risk of harm from disclosure
> is so great and maintenance of the confidentiality of the information so necessary
> that greater and more positive assurance is warranted.  Some prior restraints in
> some circumstances are approvable of course.

*Id.* (citing *Freedman v. Maryland*, 380 U.S. 51 (1965)).

Likewise, Congress determined here that, upon an individualized determination a senior FBI official that nondisclosure is required to prevent serious harm to, *inter alia*, national security, imposition of the nondisclosure obligation is warranted.  Moreover, *Marchetti* is not distinguishable on the ground that it involved enforcement of a secrecy agreement, not a statute. The Fourth Circuit made it clear that it was adjudicating Marchetti's First Amendment rights, not ignoring those rights on the basis of any contractual undertaking.  *Marchetti*, 466 F.2d at 1317 (the employee's secrecy "agreement is enforceable only because it is not a violation of," not in spite of, his First Amendment rights).

### 2. The Second Circuit Has Upheld The NSL Nondisclosure Requirement.

In the only final court decision to consider the current version of 18 U.S.C. § 2709 to date, and the only Circuit Court of Appeals opinion on the subject, the Second Circuit upheld the nondisclosure statute.  As noted, in *Doe v. Mukasey* the Second Circuit followed *Freedman* to hold that "[t]he nondisclosure requirement of subsection 2709(c) is not a typical prior restraint or a typical content-based restriction warranting the most rigorous First Amendment scrutiny." 549 F.3d 877.  The Second Circuit upheld the statute, construing it to require that the government offer to seek judicial review of a nondisclosure requirement and then, if the recipient wishes to obtain judicial review (and, presumably, does not seek judicial review itself), that the government seeks judicial review within approximately 30 days.  *Id.*  The *Mukasey* Court also suggested that such review should be concluded promptly.  Of course, as this Court is well

aware, *Mukasey* is not binding in this district, even if the nondisclosure obligation is considered a prior restraint; *Marchetti* is. And in *Marchetti* the Fourth Circuit held that, given the nature and sensitivity of the national security information at issue and the gravity of the harm that could be expected to flow from disclosure, while prompt judicial review should be available, the full scope of *Freedman* procedures did not apply and the government was not required to seek judicial review itself. In any event, here the FBI has complied with *Mukasey*, offering to seek and seeking judicial review 30 days after respondent advised that it wanted a judicial officer to review the NSL. Indeed, the NSL has complied with the strictest procedural requirements: both the statutory criteria for imposition of the nondisclosure requirement described above as well as the constitutional protections afforded when a classic prior restraint is involved.

> **3.     The NSL Nondisclosure Requirement Here Is Accompanied By Ample And Adequate Procedural Protections.**

Whether it was required to or not, the NSL served on respondent here complies with the protections outlined in *Mukasey*, *Marchetti* and even the strict protections afforded by *Freedman*. As noted, *Freedman* requires that in the case of a classic prior restraint: "'(1) any [administrative] restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.'" *Thomas*, 534 U.S. at 321 (construing *Freedman*, 380 U.S. at 58-60; additional citations omitted).

> **a.     The FBI Has Sought Judicial Review Of The NSL, Satisfying The Third *Freedman* Prong.**

In the NSL, FBI informed respondent how the government would comply with the third *Freedman* prong – that it would "bear the burden of going to court" to enforce the nondisclosure requirement if necessary. *See Thomas*, 534 U.S. at 321 (construing *Freedman*). Thus, the

government promptly sought judicial review and filed an this action to enforce the NSL. *Accord Mukasey*, 549 F.3d 877 (construing 18 U.S.C. § 2709(c) to require the government to seek judicial review, where necessary, within approximately 30 days). *Cf. Marchetti*, 466 F.2d at 1317 (stating the government should promptly review material prior to publication to determine whether its release is consistent with national security, but declining to require the government to initiate judicial review).

  **b.**  **The NSL Served On Respondent Applied Its Nondisclosure Requirement For Only A Brief Period Prior To Judicial Review, Satisfying The First And Second *Freedman* Prongs.**

  The first *Freedman* requirement is that "'any [administrative] restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained" prior to the availability (under the second *Freedman* prong) of "expeditious judicial review." *Thomas*, 534 U.S. at 321. As noted, the FBI informed respondent that it would seek judicial review to enforce the NSL nondisclosure requirement, if at all, within 30 days after respondent lodged its objection with the government. That was the "specified brief period" of *Freedman*, and so the NSL at issue here satisfies the first *Freedman* prong. Likewise, the Court has ordered prompt briefing of this matter, satisfying the second *Freedman* requirement that expeditious review be available. *Id.*

## CONCLUSION

  The NSL nondisclosure requirement applied to respondent here is justified under the facts set forth by Assistant Director ▓▓▓ in his classified declaration, and as certified by Special Agent in Charge ▓▓▓ Moreover, it meets or exceeds any applicable statutory or constitutional procedures. For all of the foregoing reasons, the Court should therefore grant the Attorney General's Petition, declare the nondisclosure requirement valid, and enjoin respondent to comply.

-24-

Dated: March 30, 2012

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch
STEVEN Y. BRESSLER D.C. Bar #482492
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:    (202) 305-0167
Facsimile:    (202) 616-8470
Steven.Bressler@usdoj.gov

NEIL H. MACBRIDE
United States Attorney

By:

R. JOSEPH SHER
KEVIN MIKOLASHEK
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, VA 22315
Telephone:    (703) 299-3891
Facsimile:    (703) 299-3983
Joe.Sher@usdoj.gov

Attorneys for the United States

# Attachment 1

# Attachment 2

